See also 149 F.Supp. 28.

In the Matter of BOROS & REISS ART WEAVE MILLS, INC., Bankrupt.

No. B–586–56.

United States District Court
D. New Jersey.

Feb. 27, 1959.

938

Allan L. Tumarkin, Newark, N. J., for Creditors' Committee.

Isadore B. Miller, Paterson, for trustee.

**WORTENDYKE, District Judge.**

This is a petition for review of an order of Referee in Bankruptcy, William H. Tallyn, dated May 28, 1958, in this proceeding. The order: (1) authorized the Trustee of the bankrupt to "abandon any interest he might have in and to an alleged cause of action against Meinhard & Company, Inc." (Meinhard); and (2) denied the applications for allowances by the secretary for the Creditors' Committee and attorney for the said Creditors' Committee.

The facts relating to the aspect of the order which deals with the Meinhard claim are as follows: Boros and Reiss Art Weave Mills, Inc., (Boros) filed a petition on October 16, 1956 for an arrangement of its debts pursuant to Chapter XI of the Bankruptcy Act. On November 14, 1956, the arrangement failed of consummation, and Boros was adjudicated a bankrupt. On November 15, 1956 Meinhard & Co., a factoring concern, filed a reclamation petition based on two chattel mortgages it held in the aggregate amount of $100,000.

On November 20, 1956, the hearing date of the reclamation petition of Meinhard, it was established that a note in the amount of $50,000, dated December 14, 1955, was given by Boros to Meinhard, and a chattel mortgage, dated the same day, from Boros to Meinhard, in the amount of $50,000 was recorded in the Register's office of Passaic County on that date. The moneys advanced by Meinhard on the loan evidenced by the note were as follows: (1) check dated December 14, 1955, payable to Boros, in the amount of $10,000, (2) check dated December 14, 1955, payable to Boros, in the amount of $20,000, which was immediately endorsed over to Meinhard in payment of a prior chattel mortgage, and (3) check dated December 15, 1955 in amount of $20,000, payable to Theodore Bialek & Co., Inc. for the account of Boros. The last mentioned check was issued in accordance with a written authorization by Boros to Meinhard dated December 14, 1955.

It was further established at the hearing that a note dated May 25, 1956 was executed by Boros in favor of Meinhard in the amount of $50,000, and a chattel mortgage of the same date, from Boros to Meinhard in the amount of $50,000, was recorded on May 29, 1956 in the Register's office of Passaic County. Upon execution of this note and mortgage, and at the request of Boros in its letter dated May 25, 1956, Meinhard set up a demand account for $50,000 in favor of Boros. Thereafter, as Boros wanted money in its account, Meinhard made transfers from this demand account to Boros' bank account on the following dates and in the following amounts: (1) May 28, 1956, $10,000; (2) May 31, 1956, $6,000; (3) June 5, 1956, $14,000; (4) June 7, 1956, $5,000; (5) June 8, 1956, $7,000; (6) June 13, 1956, $4,000; and (7) June 14, 1956, $5,000. The additional $1,000 of the aggregate of these checks, which total $51,000, was secured otherwise than by this mortgage.

There is no evidence in the record to show that Meinhard had any knowledge of the impending bankruptcy of Boros, or that Boros was insolvent at the time these transactions were made. Meinhard received a financial statement from Boros in January 1956, subsequent to the loans evidenced by the note and chattel mortgage of December 15, 1955. Meinhard received another biannual balance sheet and operating statement of Boros in the latter part of June 1956 subsequent to the filing of the second chattel mortgage for record on May 25, 1956. There is no evidence in the record to indicate that these statements showed Boros was insolvent. Boros had changed its accountants in October 1955 prior to the first loan of $50,000, and its new accountant was recommended by Meinhard. Again there is no evidence that this fact put Meinhard on notice that Boros was in any financial difficulty.

In the Referee's findings of fact contained in his Certificate of Review, he states: "No evidence has been presented to show the existence of a cause of action against Meinhard & Company,

Inc. based on alleged preferential transfer."

A "preferential transfer" is defined in Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96 (1952), as follows:

"A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and *within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter 10, 11, 12, or 13 of this title*, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * * *" [Emphasis supplied.]

Since the two mortgages in question held by Meinhard were recorded more than four months previous to the initial petition on October 14, 1956 for a Chapter XI arrangement, they cannot be attacked as preferential transfers. New York Credit Men's Ass'n v. Domestic Broadtail Producers, D.C.S.D.N.Y. 1945, 61 F.Supp. 102; 3 Collier, Bankruptcy Par. 60.32, p. 863 (14th Ed.).

It is asserted in the alternative that these transactions should be considered preferential transfers within the meaning of the New Jersey Corporation Laws. N.J.S.A. 14:14–2 states that a "sale, conveyance, assignment and transfer in contemplation of insolvency * * * shall be null and void as against creditors, except that a bona fide purchase for a valuable consideration before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency or of the sale being made in contemplation of insolvency, shall not be invalidated or impeached." In my prior opinion in this matter, dated March 4, 1957, In the Matter of Boros & Reiss Art Weave Mills, Inc., D.C., 149 F.Supp. 28, the issue as to the bona fides of the loans underlying the two mortgages was ad-

judicated. There is no evidence in the record that Meinhard had notice that Boros was insolvent at the time the notes and mortgages were executed. Although the accountant's report of Boros' books show these transactions as merely journal entries, it is uncontradicted that Boros actually received this money either by actual receipts of checks from Meinhard or by credits to its bank account or payments to its creditors. Meinhard's relation as a factor for Boros fully explains the fact that Boros, at least as to some of Meinhard's payments, did not actually receive the money on its books. Further, a preliminary copy of the accountant's report was submitted to me prior to the rendering of my decision and thus all the facts relied on by the petitioner were before me at that time.

The Referee's decision that no evidence has been presented to show the existence of a cause of action against Meinhard based on alleged preferential transfers and hence the authorization to the Trustee to abandon any action against Meinhard is affirmed. See In re Macloskey, D.C.D.N.J.1946, 66 F. Supp. 610, 612.

The second aspect of the Referee's order complained of relates to the denial of allowances to the attorney and to the secretary for the Creditors' Committee. The Committee was officially designated on December 11, 1956, after the Chapter XI arrangement failed and Boros was adjudicated a bankrupt, but it apparently had operated unofficially prior to the adjudication of bankruptcy and subsequent to the original petition for a Chapter XI arrangement.

As a general rule, and it is conceded that this case does not fall within any of the statutory exceptions, "no provision is made in bankruptcy for payment of compensation or expenses to creditors or creditors' committees or their counsel in instances of ordinary bankruptcy administration." In re Realty Associates Securities Corp., 2 Cir., 1934, 69 F.2d 41, 42, certiorari denied Bondholders' Committee v. Realty Associates Securities Corp., 292 U.S. 628, 54 S.Ct. 631, 78 L.Ed. 1482.

Counsel has attempted to avoid the effect of this general rule governing bankruptcy proceedings by claiming a right to allowances under the Chapter XI provisions relating to arrangements, more specifically, 11 U.S.C.A. § 737.[1] In this effort he must fail.

Although all but a small portion of time expended by the claimants for allowance herein was spent subsequent to Boros' being adjudged a bankrupt, the claimants assert that, because they organized the Creditors' Committee during the arrangement proceedings, they have the right to be compensated pursuant to Section 737, supra.

It is clear that prior to 1952, allowances for unofficial creditors' committees, where the plan of arrangement pursuant to Chapter XI was successful, were not allowed, Lane v. Haytian Corp., 2 Cir., 1941, 117 F.2d 216, certiorari denied 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537, although reasonable out-of-pocket expenses of the Committee in passing judgment on the plan of arrangement were allowed, Nassberg v. Rockwell Baking Corp., 2 Cir., 1949, 172 F.2d 554. In

---

1. Section 737, so far as applicable, states: "At such meeting [of creditors to confirm an arrangement under Chapter XI] * * * the judge or referee shall, after the acceptance of the arrangement, * * * (2) fix a time within which the debtor shall deposit * * * the actual and necessary expenses, in such amounts as the court may allow, incurred after its appointment by a committee appointed pursuant to section 738 of this title, or incurred before or after the filing of the petition under this chapter by a committee designated in writings filed with the court and signed and acknowledged by a majority in amount of unsecured creditors whose claims have been scheduled otherwise than as contingent * * * *Provided, however,* That in fixing any such allowances the court shall give consideration only to the services which contributed to the arrangement confirmed or to the refusal of confirmation of an arrangement, or which were beneficial in the administration of the estate, and the proper costs and expenses incident thereto; * * * *"

1952 to overcome inequities resulting from the holding in the Haytian case, supra, Section 737 was amended to its present form in order to liberalize payments to unofficial creditors' committees for the services rendered by them prior to the appointment of the official Creditors' Committee. U.S.Code Cong. & Admin.News, 82d Cong.1952, Vol. 2, pp. 1980–1981.

The claims for allowance herein concededly do not fall within the first two provisos of Section 737, in that the services rendered did not either contribute to the confirmation of the arrangement (which was unsuccessful) nor were they rendered in connection with the refusal of the confirmation of the arrangement. It is urged that the services were beneficial to the estate and hence the allowances should be permitted under the third proviso of Section 737. However, the Referee found as a fact that there was no showing that the services were beneficial in the administration of the estate and, on the record in this case, there is no showing to the contrary.

It should further be noted that this unofficial committee has not complied with the terms of Section 737, supra, in that unofficial committees and their representatives shall receive allowances for their services "before or after the filing of the petition under this chapter by a committee designated in writings, filed with the court and signed and acknowledged by a majority in amount of unsecured creditors whose claims have been scheduled otherwise than as contingent, unliquidated or disputed * * *." No such designation by the unsecured creditors is in the present record.

 It is well settled that the Bankruptcy Court lacks the power to grant, and the policy of the Bankruptcy Act is against, compensation not expressly provided for by the Act. Lane v. Haytian Corp., supra, 117 F.2d at page 219. In re Brigantine Beach Hotel Corp., 3 Cir., 1952, 197 F.2d 296, cited by the claimant herein, is not in point because in that case it was expressly found that the efforts of the attorney for the Creditors' Committee were beneficial to the estate in recovering, for the benefit of creditors, the principal asset of the estate. An examination of In re New York, Ontario and Western Railway Co., D.C.S.D.N.Y. 1958, 171 F.Supp. 634, cited by both parties herein, reveals an entirely different factual situation. There the efforts of the parties for the benefit of the debtor extended over a period of twenty years and were rendered with the hope that a reorganization would be successful. Such is not the factual situation here. It is further noted that the proceedings in the New York, Ontario and Western case were under the provisions of the Bankruptcy Act relating to the reorganization of railroads, and not the provisions of Chapter XI as herein invoked.

Although the claims here are for allowances for the attorney for the Creditors' Committee and for the secretary of the Creditors' Committee, no statement of the services of the latter has been submitted for consideration. However, in the light of the foregoing, such allowances were properly denied by the Referee, and his order under review is affirmed.