In re TEXACO INC., Texaco Capital
Inc., and Texaco Capital
N.V., Debtors.

NEW YORK LIFE INSURANCE
COMPANY, Plaintiff,

v.

The CHASE MANHATTAN BANK, N.A.,
Texaco Inc., and Texaco Capital
Inc., Defendants.

Bankruptcy Nos. 87 B
20142–87 B 20144.
Adv. No. 88 Adv. 6040.

United States Bankruptcy Court,
S.D. New York.

April 28, 1988.

Kronish, Lieb, Weiner & Hellman, New York City, for New York Life Ins. Co.

Weil, Gotshal & Manges, New York City, for Texaco Inc. et al.; Stephen Karotkin, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Chase Manhattan, N.A.; Ronald L. Cohen, and Charles R. Hager, of counsel.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

New York Life Insurance Company ("NYL") has commenced an adversary ac-

tion against The Chase Manhattan Bank, N.A. ("Chase") and the debtors, Texaco Inc., and Texaco Capital Inc. for reimbursement of its attorneys' fees, costs and expenses in having assisted in preserving the rights of a class of noteholders. By this adversary proceeding, NYL does not seek any recovery or relief from the debtors, their estates, or any parties other than the class of noteholders of which NYL is a member. The funds in question were distributed by the debtors under their confirmed plan of reorganization and are held by Chase for the benefit of the noteholders for whom Chase acts as indenture trustee.

On April 6, 1988, this court entered an order temporarily restraining Chase from distributing $250,000 of the total of $415 million received by it on account of holders of 13.25% Extendible Notes due 1999, issued by Texaco Capital Inc. and guaranteed by Texaco Inc. NYL now seeks a preliminary injunction requiring Chase to keep $250,000 of the $415 million distribution intact until such time as a final judgment is rendered in NYL's adversary proceeding.

By motion dated April 15, 1988, Chase moved for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), dismissing NYL's complaint on the ground that it fails to state a claim upon which relief can be granted. Chase maintains that the only available means by which NYL may obtain reimbursement of attorneys' fees, costs and expenses incurred in the course of this case is to make the appropriate application to this court under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). A hearing was held on April 26, 1988.

## THE COMPLAINT

NYL alleges that its adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O) in that it concerns administration of the estates of these Chapter 11 cases and payment of allowed claims.

The complaint alleges, in substance, that Chase is the indenture trustee under an indenture pursuant to which Texaco Capital issued, and Texaco Inc. guaranteed, $500 million of debt securities designated "Extendible Notes due 1999", bearing interest at the rate of 13.25% per annum during an initial period ended May 31, 1987. NYL claims that it owns $43,475,000 in principal amount of the 13.25% notes. The complaint states that shortly after the Texaco Chapter 11 cases, Texaco Capital issued an Officer's Certificate dated April 30, 1987, stating that, but for the commencement of the Chapter 11 case, immediately after the initial interest period ending May 31, 1987, Texaco Capital would have established a reduced interest rate of 7.75% for the 13.25% notes. Thereafter, Texaco Capital entered into a stipulation with Chase, dated May 8, 1987, permitting the noteholders to tender their notes, but not seek payment, despite the automatic stay. NYL's complaint further states, in substance, that Texaco Capital will pay interest at the higher rate of 13.25% to those noteholders who tendered their notes pursuant to the stipulation and that by virtue of the higher interest rate the tendering noteholders will receive an aggregate of approximately $20 million more in interest than they would have received if Texaco had been successful in establishing a reduced 7.75% rate of interest for these notes.

NYL further alleges in its complaint that it has helped to produce the additional fund of $20 million from which all the tendering noteholders will benefit and that NYL is entitled to a judgment against Chase as indenture trustee for $250,000, representing NYL's attorneys' fees, costs and expenses for benefiting the tendering noteholders. NYL also seeks a preliminary injunction restraining Chase from distributing the funds to the tendering noteholders until such time as a final judgment is rendered in this adversary proceeding.

The relevant language in NYL's complaint in support of NYL's entitlement to reimbursement of its attorneys' fees, expenses and costs from the "common fund" held by Chase, as indenture trustee, for distribution to the tendering noteholders, is as follows:

THE EXTENDIBLE NOTE LITIGATION

32. Beginning in May 1987, New York Life devoted substantial effort to preserving and establishing the Tendering Parties 'right to preserving and establishing the Tendering Parties' right to receive 13.25% as the applicable rate of interest payable on the 13.25% Notes. At that time, New York Life urged Chase, as indenture trustee, to move in the Texaco chapter 11 cases for relief from the automatic stay so as to permit Chase to give notice to Texaco Capital accelerating the 13.25% Notes by reason of Texaco Capital's commencement of its chapter 11 case. The purpose of that motion was to insure that the 13.25% interest rate would continue in force despite Texaco's position that it could reduce the rate to 7.75% and the fact that Texaco was dishonoring each tendering holder's right to be paid in full, as set forth in the April 30, 1987 Officer's Certificate.

33. Chase encouraged New York Life to pursue efforts to preserve the higher interest rate for the benefit of all holders of 13.25% Notes.

34. In the extendible note litigation, New York Life contended that by the terms of the 13.25% Notes, the interest rate should remain at the initial rate of 13.25% on those Notes if they became "overdue" prior to June 1, 1987 and the optional right to receive payment was not made available by Texaco.

35. Chase had the right to give notice of acceleration of the maturity of these Notes if an "event of default", as defined in the Indenture, occurred. Although there was no monetary default in May 1987, the Indenture provided that a bankruptcy filing by Texaco Inc. or Texaco Capital would constitute an "event of default". It was on the ground of Texaco's bankruptcy filing that New York Life urged Chase to accelerate the Notes for the purpose of maintaining the interest rate but not for collection. New York Life played a leading role in the proceedings that sought court approval to accelerate the 13.25% Notes, and incurred approximately $250,000 in legal fees and costs in doing so for the benefit of itself and all other holders of 13.25% Notes.

36. As a result of New York Life's efforts in connection with the extendible note litigation involving the 13.25% Notes, and also with respect to a similar issue of extendible notes as to which this Court issued its January 1988 Order permitting acceleration for non-payment of post-petition interest, in March 1988, during the pendency on the appeals from both orders, Texaco agreed to pay interest to the Tendering Parties on their 13.25% Notes at the rate of 13.25% per annum for all Interest Periods, and to pay the principal sum in full.

37. By virtue of preserving the higher rate of interest of 13.25% per annum, instead of the 7.75% per annum previously urged by Texaco, the Tendering Parties will receive an aggregate of approximately $20 million more in interest on their 13.25% Notes than they would have received if Texaco had been successful in establishing a 7.75% rate of interest.

THE "COMMON FUND" THEORY

38. Through its efforts in connection with the 13.25% Note litigation and the subsequent resolution of the interest dispute by agreement of the parties, New York Life has helped to produce a cash fund in the amount of approximately $20 million, from which all Tendering Parties will benefit. As set forth above, it is expected that on or about April 8, 1988 Texaco will pay that cash fund to Chase as indenture trustee for the holders of the tendered 13.25% Notes for distribution to all of the holders of 13.25% Notes who tendered same under the May 8th Order.

39. New York Life is entitled to recover from such "common fund" all attorneys' fees, costs and expenses incurred by it in connection with its assistance in preserving and establishing that fund. New York Life has paid legal fees and costs to its special counsel, Kronish, Lieb, Weiner & Hellman in excess of

$250,000 in connection with the extendible note litigations, and settlement negotiations with Texaco involving the interest rate on the 13.25% Notes. Since its counsel has been paid for such services by New York Life, any recovery in this adversary proceeding will be solely to reimburse New York Life for such expenses. Such entitlement is established by the decision of the United States Supreme Court in *Trustees v. Greenough,* 105 U.S. [15 Otto] [527, 26 L.Ed. 1157] (1882).

## JURISDICTION

NYL clearly notes that its adversary proceeding is not bottomed on 11 U.S.C. § 503(b)(3)(D), which authorizes an award to a creditor who makes a substantial contribution in a Chapter 11 case. Thus, NYL does not now assert any claim against the Texaco debtors or their Chapter 11 estates. This point is significant because 11 U.S.C. § 503(b) is the exclusive vehicle for obtaining reimbursement for attorneys' fees, as an administrative expense, directly from a bankruptcy estate. The bankruptcy court lacks the power to grant compensation from an estate other than as expressly provided for by the Code. *See In re United Merchants and Manufacturers, Inc.,* 597 F.2d 348 (2d Cir.1979). Instead, NYL relies upon the equitable "common fund" doctrine that a benefited class should bear the cost of producing the benefit, as expressed in *Trustees of the Internal Improvement Fund v. Greenough,* 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1882). Thus, NYL's adversary action is not based on any right created by the Bankruptcy Code, it is based on state law general equitable principles.

In order for this court to have jurisdiction over NYL's adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the general reference provision in 28 U.S.C. § 157(a), it must fit into one of the three categories stated in 28 U.S.C. § 1334(b), namely, proceedings arising under title 11, arising in title 11 cases, or related to title 11 cases. Section 157(b)(1) in 28 U.S.C. vests full judicial power in bankruptcy cases over core proceedings "arising under" title 11, or "arising in" a case under title 11. Those proceedings "related" to title 11 cases are not classified as core cases under 28 U.S.C. § 157(b)(1).

[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise *only* in the context of a bankruptcy case.

(Emphasis added). *Wood v. Wood (In re Wood)* 825 F.2d 90 at 97 (5th Cir.1987).

NYL argues that its "common fund" cause of action against Chase "arises in" the debtors' Chapter 11 cases and is a core proceeding as illustrated by the proceedings referred to in 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); subsection (b)(2)(B) (allowance or disallowance of claims against the estate); and subsection (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). Manifestly, NYL concedes that it does not seek any recovery against the debtors or their estates and that it joined the Texaco defendants as parties solely because the funds in question were derived from distributions under their confirmed plan of reorganization. It was made clear that the sole relief sought by NYL in this adversary proceeding was to gain reimbursement from the funds held by Chase in its capacity as indenture trustee for the 13.25% Noteholders for the reimbursement of NYL's expense out of the fund and not from Texaco or Texaco Capital, or their Chapter 11 estates. Hence, NYL's adversary proceeding does not involve the administration of the Texaco debtors' estates for purposes of 28 U.S.C. § 157(b)(2)(A); does not involve the allowance or disallowance of claims against the estate within the meaning of 28 U.S.C. § 157(b)(2)(B), nor does it relate to the liquidation of the assets of the estate as expressed in 28 U.S.C. § 157(b)(2)(O). NYL's adversary proceeding against Chase as indenture trustee for the 13.25% noteholders does not invoke a substantive right provided by title 11, nor is it a proceeding that by its nature could arise only in the context of a bankruptcy case. Indeed, NYL's "common fund" theo-

ry is not limited to bankruptcy cases and is more frequently advanced in nonbankruptcy cases where there is no specific statutory basis available as a source of counsel fees. *See* J. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Fund,* 87 Harv.L.Rev. 1597 (1974). The "common fund" as a source of counsel fees was created single-handedly by the United States Supreme Court in *Trustees of the Internal Improvement Fund v. Greenough,* 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1882) and repeated in *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), both being nonbankruptcy cases where attorneys were given compensation for litigation that created, increased, or protected strangers' shares in funds as a result of the legal services rendered in successful litigation by the attorneys. From these cases the "common fund" was extended so that the attorney could assert his claim even though he agreed with his client to serve the client gratuitously, *Washington Gas Light Co. v. Baker,* 195 F.2d 29, 33–34 (D.C.Cir.1951), or where the client's portion for contribution to his own outlay in attorney fees was brought first and denied; the denial did not operate as *res judicata* to bar the lawyer's separate claim for a fee, chargeable to the fund. *Wallace v. Fiske,* 80 F.2d 897, 900–12 (8th Cir.1936).

Accordingly, NYL's adversary proceeding does not arise under or arise in a case under title 11 as required by 28 U.S.C. § 1334(b) and is not a core proceeding within the meaning of 28 U.S.C. § 157(b)(1).

█ Chase and the Texaco debtors have argued that NYL's adversary proceeding is also not related to a case under title 11 and, therefore, this court lacks jurisdiction of the subject matter of NYL's adversary proceeding. This court had previously held that in a private controversy between a third-party plaintiff and nondebtor defendants, where the plaintiff's suit would not produce any benefits for the other creditors of the bankruptcy estate nor would such action affect the other creditors' distribution prospects, the court must dismiss the plaintiff's action for lack of jurisdiction

because it did not relate to a case under title 11. *In re R.H.N. Realty Corp.,* 84 B.R. 356, 87 Adv. 6005 (Bankr.S.D.N.Y. 1988); *Murdock v. Allina (In re Curtina International, Inc.),* 15 B.R. 993 (Bankr.S. D.N.Y.1981). These cases are consistent with the theory that an adversary proceeding may be characterized as related to the title 11 case only when the outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy. *National Union Fire Insurance Co. of Pittsburgh v. Titan Energy, Inc., (In re Titan Energy, Inc.),* 837 F.2d 325 at 330 (8th Cir.1988) ("Yet, even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test ..."); *Wisconsin Department of Industry, Labor and Human Relations v. Marine Bank Monroe (In re Kubly),* 818 F.2d 643 (7th Cir.1987) (Proceeds belonging to nondebtor corporation not claimed by debtors and complaint against nondebtor corporation would not affect payments to be made by the debtors to the other creditors or the administration of the debtors' estates); *Elscint, Inc. v. First Wisconsin Financial Corporation, (In re Xonics, Inc.),* 813 F.2d 127 (7th Cir.1987) (Plan abandoned accounts receivable claimed by secured creditors with the result that there was no related jurisdiction over secured creditors' disputes as to the property because the bankruptcy court's jurisdiction did not follow the property and lapsed when the property left the estate); *Pacor v. Higgins,* 743 F.2d 984 (3d Cir.1984) (Products liability action against asbestos distributor of Johns–Manville Corp., the Chapter 11 debtor-manufacturer which agreed to indemnify the distributor-defendant would not affect the administration of the debtor-manufacturer's estate because the plaintiff was not a creditor of the debtor; there was no "related to" bankruptcy jurisdiction).

█ In the instant case, if NYL should succeed on its "common fund" theory for reimbursement of its attorneys' fees in connection with the debtor's agreement to pay interest under the plan at the rate of 13.25% to those noteholders who tendered

their notes, the noteholders will ultimately receive the amount provided under the plan, less their pro rata share of NYL's attorneys' fees, expenses and costs. Moreover, the debtors will be relieved of defending a potential administration expense claim by NYL under 11 U.S.C. § 503(b)(3)(D), to the extent that NYL's attorneys are compensated from the common fund. Conceivably, NYL's adversary proceeding could have an affect on the size of the distribution that the tendering 13.25% noteholders will ultimately receive as a distribution under the debtor's confirmed plan, so as to be regarded as "related to" the Chapter 11 case. *See Wood v. Wood (In re Wood)*, 825 F.2d at 93. It is no answer to say here that, as in *In re Xonics, Inc.*, 813 F.2d at 131, the fund has already passed from the debtors' estates. The bankruptcy court is nonetheless responsible for determining that any payments made by persons acquiring property under the plan for services or for costs and expenses in connection with a Chapter 11 case, are subject to the approval of the court as reasonable. *See* 11 U.S.C. § 1129(a)(4). The dispute in the instant case implicates more than just who is entitled to receive specific property; the issue involves a creditor's claim for attorneys' fees against other creditors for benefits allegedly received by them as a result of the plaintiff creditor's conduct. If this court does not determine NYL's entitlement to attorneys' fees based upon the "common fund" doctrine, no other court will be in a position to do so, because the funds will be distributed by Chase to the various tendering noteholders all over the country and NYL will not be able to obtain jurisdiction over all of the noteholders, collectively, in one court. Hence, if any fees are to be awarded to NYL as a result of its conduct, this function must be performed by the bankruptcy court, because the bankruptcy court has jurisdiction to fix the reasonable amount of all fees for legal services performed in a Chapter 11 case. *See Leiman v. Guttman*, 336 U.S. 1, 3, 69 S.Ct. 371, 372, 93 L.Ed. 453 (1949).

Therefore, in the circumstances of this case, NYL's adversary proceeding is suffi-ciently related to the debtor's pending Chapter 11 cases to allow this court to exercise the "related to" jurisdiction under 28 U.S.C. § 1334(b).

## THE COMMON FUND DOCTRINE

NYL claims it is entitled to compensation for attorney fees and disbursements incurred in pursuing its motion against Texaco which resulted in an increase in the interest rates of the notes at issue. NYL asserts that "largely as a result of [its] efforts" in pursuing this action, it made a substantial contribution to the litigation which resulted in the creation or preservation of or an increase in the value of the notes, thereby generating a benefit to all the noteholders. Based upon its "active and valuable participation", NYL citing *Trustees of the Internal Improvement Fund v. Greenough*, 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1882), claims the common fund produced for the noteholders should be utilized as a source to compensate its attorneys who "played a role" in obtaining the benefit for all the noteholders.

In *Trustees v. Greenough*, 105 U.S. 527, the state of Florida conveyed to trustees millions of acres of state-owned land to provide security for a bond issue of the Florida Railroad Company. The trustees sold thousands of acres of this land at nominal prices and failed to provide reserves of the payment of interest and principle on the bonds. A holder of the Railroad Company's bonds initiated a suit to set aside the transfer as fraudulent and for the appointment of a receiver. The labors of litigation, at this sole bondholder's expense, came to fruition when he recaptured the looted assets and secured large payments to the bondholders, all of whom willingly accepted such payment. Subsequently, this bondholder sought compensation for his lawyers' fees. The court retained "control" over a residue of the trust estate which could be utilized to pay such funds. From this residue, the Supreme Court allowed compensation for attorney fees reasoning that if the trustees had rightfully incurred expenses in retrieving the assets for the trust, the expenses would have

been chargeable to the trust estate which must "bear the expenses of its own administration". *Trustees v. Greenough*, 105 U.S. at 532. The management of the fund was taken out of the hands of the trustee and this bondholder, through his sole efforts, had merely performed the trustee's duty. *Trustees v. Greenough*, 105 U.S. at 529 ("[I]f the complainant is not a trustee, he has at least acted the part of a trustee in relation to the common interest"). The bondholder had filed the complaint not only on his behalf, but on behalf of all the other bondholders having an equal interest in the trust. *Trustees v. Greenough*, 105 U.S. at 532. By bringing this complaint, the bondholder brought this neglect and misconduct of the trustees into court for administration according to the purposes of the trust. *Trustees v. Greenough*, 105 U.S. at 532. Accordingly, the Supreme Court held that to deny this bondholder the attorney costs incurred

> would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage. He has worked for them as well as for himself; ... [t]hey ought to contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution.

*Trustees v. Greenough*, 105 U.S. at 532.

Although *Trustees v. Greenough* is an old case, the "common fund" theory has been sustained in recent case law and is the accepted method of seeking compensation for attorney fees for litigation by parties who initiated suits which resulted in a benefit to a group or class of people. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Mills v. Electric Auto-lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (Where shareholders of the defendant initiated a suit against the defendant, and attorney fees were incurred in the successful prosecution of this suit which benefited all shareholders and the corporation, the court found attorney fees may be awarded); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (Where plaintiff initiated a suit on her own behalf and not for a class, and where her success would have a *stare decisis* effect entitling others to recover out of the specific assets of the same defendant, plaintiff may seek compensation of attorney fees from the fund); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). *See generally* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1803 (1972); J. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 Harv.L.Rev.1597 (1974).[1]

■ The facts stated in the adversary complaint in this proceeding differ greatly from those in which courts have granted compensation to attorneys based upon the common fund theory established in *Trustees v. Greenough*. Chase, as indenture trustee to the noteholders, unsuccessfully moved for relief from the automatic stay. NYL appeared in this court in support of

---

**1.** Chase argues that the limitation on the bankruptcy court's equitable powers prohibits it from awarding fees based upon the common fund doctrine because such action could not be exercised within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, — U.S. —, 108 S.Ct. 963, 99 L.Ed.2d 169, 17 B.C.D. 201 (1988). It is asserted by Chase that

"the equity rules as to allowance of counsel fees are not applicable in proceedings under the Bankruptcy Act of 1898, [*citing Berry v. Root*, 148 F.2d 945 (5th Cir.) *cert. denied*, 326 U.S. 755, 66 S.Ct. 91, 90 L.Ed. 453 (1945)], which makes provision for the allowance of counsel fees in certain instances and by implication denies counsel in all other instances. As a general rule, therefore, no counsel fees

can be awarded in bankruptcy proceedings except upon express statutory authorization [*citing In re Joslyn*, 224 F.2d 223 (7th Cir. 1955); *Lea v. Patterson Sav. Inst.*, 142 F.2d 932 (5th Cir.1944); *In re Boros & Reiss Art Weave Mills, Inc.*, 170 F.Supp. 937 (D.N.J. 1959)], and the bankruptcy court does not have inherent equitable power to make an allowance for attorneys' fees payable out of the estate. [citations omitted].

Obviously, this argument is inapplicable in view of this court's findings that the fund at issue is *not* property of the debtor's estate and therefore this court is not confined by the statutory provisions which govern attorney fee awards which are paid from the property of the debtor's estate.

Chase's motion and now argues it urged Chase to move for relief from the stay. Yet, NYL does not contend that Chase had neglected or abdicated its fiduciary duties in its efforts to pursue litigation on behalf of the noteholders. Nor does N.Y.L. claim that its noteholders were not adequately represented by Chase in the litigation.

NYL has commenced no litigation on its own in this case and does not claim that Chase failed to act in an appropriate and timely manner. At most, NYL argues that as a consequence of its support of Chase's motion and its active participation in negotiations with the debtors, the debtors acquiesed in providing for the higher interest rate under its plan which is to be paid to those noteholders who tendered their notes for payment. However,

[i]n the present case, the fund was already in court, converted into money, and ready for distribution whenever the rights of the respective claimants should be determined by the court. Appellant represented one set of claimants under an agreed compensation contract, but the fund was represented by the receiver, at whose instance the court appointed special counsel to advise him; and not only is there no suggestion of failure of performance of duty on the part of either receiver or his counsel, but an admission that their duties were faithfully performed. Appellant's suggestion of a means of compromise of the differences of the contesting claimants may very well have hastened administration of the fund and may also have been advantageous to his clients and some others in like situation with them, but this is not enough to justify an order requiring the latter to pay him involuntary tribute ... [citation omitted] "Where the duty of the court and receivers is evident, attorneys' fees cannot be awarded to one who voluntarily comes into court to point out that duty, whether in friendly or unfriendly litigation". This we said was true in that case—as it is in this—because otherwise a fund could be completely dissipated by numerous interveners eager to assist the court and its receivers.

*Geiger v. Peyser,* 123 F.2d 167, 168 (D.C. Cir.1941). *See In re Maimone,* 41 B.R. 974, 984 (Bankr.D.N.J.1984) ("The court concludes that it would be inappropriate to apply the equitable fund doctrine to a complex and protracted Bankruptcy proceeding in which many parties have at various times advanced many motions, complaints and positions ... [The equitable fund] doctrine would encourage intermeddling by parties having a slight contingent interest in a case in the hope that they might be permitted to recover attorneys' fees for the efforts. It is preferable, in the bankruptcy context, to have each party represent its own interests without such a distortion in incentives").

NYL has not yet offered any evidence to substantiate its claim that its efforts conferred a benefit on the other noteholders. Therefore, as far as this court can discern, NYL appeared in this case to protect its own interest as one of the largest noteholders, which is within its discretion, but any efforts by its counsel were in support of those by Chase's counsel, who acted for the indenture trustee pursuant to the terms of an agreement entered into with each individual noteholder. The benefits received by the class of noteholders with respect to the 13.25% Extendible Notes due 1999 did not flow directly from a successful litigation commenced either by NYL or by Chase. Indeed, Chase's application for relief from the automatic stay in order to serve a notice of acceleration of the 13.25% Extendible Note due 1999 was denied by this court. *In re Texaco Inc.,* 73 B.R. 960 (Bankr.S.D.N.Y.1987). Thus, the tendering noteholders' entitlement to the full 13.25% interest rate, rather than the reduced rate of 7.75% for the period commencing June 1, 1987, arose out of Texaco's agreement to pay the higher amount when it made its payment to Chase on the effective date of the plan. The only litigation on behalf of this class of tendering noteholders was unsuccessful. In view of the fact that the "common fund" doctrine applies to the reimbursement of a successful party for litigation expenses which benefited an unrepresented, or inadequately represented class

or group, it follows that the "common fund" doctrine can have no application to the facts in this case where the tendering noteholders will receive their benefits pursuant to a distribution under a confirmed plan of reorganization. Chapter 11 was designed to encourage negotiations with a view to arriving at a confirmable plan of reorganization. If every party in interest could seek reimbursement from the bankruptcy court for its counsel's conduct in the negotiation process on the basis of the "common fund" doctrine, such practice would read 11 U.S.C. § 503(b)(3)(D) out of the Code. Reimbursement for a substantial contribution to a Chapter 11 case would shift from an obligation of the estate to a tribute to be paid by the class benefitting from a member's successful negotiation efforts.

Accordingly, NYL's adversary proceeding against Chase for reimbursement of its attorneys' fees out of the funds held by Chase for tendering noteholders cannot succeed on the "common fund" theory alleged in the complaint. NYL may not saddle the other tendering noteholders in these Chapter 11 cases with reimbursement for NYL's attorneys' fees incurred in assisting the indenture trustee's counsel in fulfilling Chase's fiduciary obligation to the tendering noteholders. NYL's motion for a preliminary injunction must be denied because there is no likelihood of success.

## PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and § 157(a). This is a related non-core proceeding governed by 28 U.S.C. § 157(c)(1).

2. Chase's motion to dismiss the adversary complaint for failing to state a claim upon which relief can be granted should be denied.

New York Life Insurance Company's motion for a preliminary injunction restraining Chase from distributing the funds received under the debtors' confirmed plan of reorganization to the tendering 13.25% Extendible Notes due 1999 should be denied because there is no likelihood that New York Life Insurance Company will succeed in obtaining reimbursement of its attorneys' fees, expenses and costs from the funds to be distributed to the tendering noteholders.