In re SPECTRUM INFORMATION TECHNOLOGIES, INC., Dealer Services Business Systems, Inc., and Spectrum Cellular Corporation, Debtors.

Bankruptcy Nos. 195–10690–260, 195–10692–260 and 195–10693–260.

United States Bankruptcy Court, E.D. New York.

June 22, 1995.

Ohrenstein & Brown, by Warren E. Graham, New York City, for Home Ins. Co. of Illinois.

Cleary, Gottlieb, Steen & Hamilton, by Shari Siegel, New York City, for debtors.

Mayer Brown & Platt, by Raniero D'Aversa, New York City, for the Unsecured Creditors Committee of Spectrum.

DECISION ON MOTION BY HOME INSURANCE COMPANY OF ILLINOIS FOR RELIEF FROM AND MODIFICATION OF THE AUTOMATIC STAY

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before the Court on the motion of Home Insurance Company of Illinois ("Home") for relief from and modification of the automatic stay pursuant to section 362(d) of the Bankruptcy Code[1] to permit Home to rescind through arbitration a policy of insurance issued to the directors and officers of Spectrum Information Technologies, Inc. ("Debtor" or "Spectrum") and, alternatively, to resolve through arbitration certain other disputes arising under such policy. Spectrum and the Official Committee of Unsecured Creditors of Spectrum (collectively "the Debtor" or "Spectrum") jointly object to the motion on the ground that Home has failed to meet its burden of showing cause for lifting the stay.

Upon conclusion of the hearing on the motion at which all parties appeared and were heard, this matter was taken under advisement. After deliberation and consideration of the facts and issues raised herein, for the reasons hereinafter set forth, Home's motion for relief from and modification of the automatic stay is denied.

*FACTUAL BACKGROUND*

Spectrum is a publicly held corporation that is the corporate parent of Dealer Services Business Systems, Inc. and Spectrum Cellular Corporation, the other two above-captioned debtors. As a result of substantial

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

financial losses caused in part by significant expenses incurred in the defense of numerous securities litigation cases pending around the country,[2] on January 26, 1995, Spectrum and its aforesaid subsidiaries filed their respective petitions for reorganization under chapter 11. This Court approved the joint administration and consolidation of such chapter 11 cases for procedural purposes only.[3]

On or about June 26, 1992, Home issued a Directors and Officers Liability and Company Reimbursement Policy (the "policy") to the directors and officers of Spectrum. This policy covered the period June 26, 1992 to June 26, 1993. On or about June 26, 1993, Home issued a renewal of the policy (the "renewal policy") to the directors and officers of Spectrum. This renewal policy covered the period June 26, 1993 to June 26, 1994.

The policy and renewal policy cover Spectrum's directors and officers for losses incurred in connection with any actual or alleged breach of duty, error, omission, misstatement or misleading statement committed in their capacity as directors or officers of Spectrum during the aforesaid coverage periods. In addition, the policy and renewal policy cover Spectrum to the extent of its indemnification obligations to its directors and officers but does not cover Spectrum for any losses incurred as a result of claims against Spectrum itself.

The renewal policy contains an arbitration provision under which any controversy arising out of or relating to the policy is to be settled by binding arbitration pursuant to the procedures set forth in the policy.[4]

Although Home has not commenced an adversary proceeding in this case, it seeks relief from the stay in order to commence arbitration and effectuate rescission of the renewal policy on the grounds that there were material misrepresentations and concealment of material information made in the May 27, 1993 application for the renewal policy.[5]

Specifically, Home alleges that Spectrum misrepresented or concealed facts relating to a pending SEC inquiry and to the May 1993 trading activities of its then directors and officers and that such alleged misrepresentations and concealment were material to the risk being insured. Home claims that in the absence of such relief from the stay, it will be irreparably harmed because it will be required to make payments pursuant to the renewal policy in connection with the securities lawsuits referred to above which policy would not have been issued had the alleged misrepresentations and concealment not been made.

In the alternative to rescission, Home seeks a declaration that coverage is not afforded under the renewal policy for coverage of lawsuits commenced subsequent to the issuance of the renewal policy and that coverage, if any, would only be afforded under the original policy and is specifically excluded by the renewal policy and its endorsements.

Spectrum disputes Home's allegations and denies having made misrepresentations or concealed material facts in securing the renewal policy. Moreover, Spectrum claims

---

**2.** A consolidated lawsuit is pending in the United States District Court for the Eastern District of New York.

**3.** Computers Unlimited of Wisconsin, Inc., a third administratively consolidated debtor/subsidiary of Spectrum, was converted from chapter 11 to chapter 7 by order dated May 25, 1995.

**4.** The arbitration endorsement of the renewal policy provides in pertinent part, as follows:
> Any controversy arising out of or relating to this policy or the breach thereof shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association (herein "AAA") then in effect. The Insurer and the company, and/or the assureds, before entering into arbitration, shall each ap-

point an arbitrator. Each arbitrator must be a present or former executive of an insurance company.... the two arbitrators will select a third arbitrator to be chairman of the panel. Endorsement No. 1 to renewal policy.

**5.** Home indicates that absent relief from the stay, "this Court will undoubtedly be faced with the issue of arbitration since there will likely be litigation commenced ... which pursuant to the Federal Arbitration Act should be stayed pending arbitration." Thus, Home has requested that rather than await commencement of such litigation, this Court should, at this time, address the issue of the appropriateness of arbitration. *See* Memorandum of Law, at 13.

Home has failed to establish the requisite cause which would entitle it to relief from the automatic stay.

### Discussion

Section 362(d) provides in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, . . .

11 U.S.C. § 362(d).

Thus, in order to warrant modification of the stay, Home must demonstrate that cause exists therefor. Home contends that cause exists because the arbitration clause contained in the renewal policy makes the American Arbitration Association ("AAA") the proper forum to resolve the issues raised by Home in connection with that policy.

Home argues that the arbitration agreement between it and Spectrum is subject to the Federal Arbitration Act [6] and although Home concedes that the arbitration provision is not mandatory,[7] it contends that this Court nevertheless has the power to allow the arbitration to go forward and should exercise that power in recognition of the strong federal policy favoring arbitration as an alternative dispute resolution device.

Spectrum does not contest the fact that the arbitration agreement is governed by the Federal Arbitration Act but contends that even though this Court has the power to allow arbitration, for a variety of reasons this Court should exercise its discretion and maintain jurisdiction over the disputed issues.

The Federal Arbitration Act requires federal courts to enforce valid arbitration agreements in commercial contracts and limits the grounds for vacating or modifying arbitration awards. This federal arbitration policy must be considered in light of the Bankruptcy Code, particularly section 362, which is framed to consolidate jurisdiction of a debtor's property so as to ensure an orderly and expeditious rehabilitation of the debtor or the liquidation of its assets. Thus, as observed by the late Judge Howard Schwartzberg, "the issue as to whether or not a bankruptcy court should allow a dispute to be resolved by an arbitration forum to which the parties agreed implicates the clash of two federal statutes." *In re Al–Cam Development Corp.*, 99 B.R. 573, 575–6 (S.D.N.Y.1989).

This clash was addressed by the Third Circuit in *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983), *cert. denied* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).[8] The Third Circuit found that the bankruptcy court did not abuse its discretion in failing to honor a contractually agreed upon arbitration provision and held:

> Bankruptcy proceedings, however, have long held a special place in the federal judicial system. . . . While the sanctity of arbitration is of fundamental federal con-

---

**6.** Section 3 of the Federal Arbitration Act provides, as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.
>
> 9 U.S.C. § 3.

**7.** *See* Home's Memorandum of Law, at 16.

**8.** The *Zimmerman* court relied on the Bankruptcy Code enacted in 1978 which granted bankruptcy courts original but not exclusive jurisdiction of *all* civil proceedings related to a bankruptcy case. However, this general jurisdiction of all disputes involving a debtor's property was subsequently modified by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") which distinguishes between civil proceeding "arising under" the Bankruptcy Code, i.e., core proceedings, and civil proceedings "related to" the Bankruptcy Code, i.e., noncore proceedings. *See* 28 U.S.C. § 157. A bankruptcy court may hear and determine all core proceedings and enter orders. However, under 28 U.S.C. § 157(c)(2), a bankruptcy court may hear noncore proceedings but without consent of the parties, may not enter orders.

cern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court.

*Zimmerman,* 712 F.2d at 59.

*Zimmerman's* holding in noncore cases has been limited by the more recent Third Circuit case of *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith,* 885 F.2d 1149 (3d Cir.1989). In reversing the district court's denial of a motion to compel arbitration, the Third Circuit held that an arbitration clause regarding a *noncore* matter should be enforced by the bankruptcy court. The court concluded that the strong federal policy favoring arbitration mandated federal courts to enforce valid arbitration agreements unless enforcement would "seriously jeopardize the objectives of [the Bankruptcy] Code." *Id.* at 1161.

However, notwithstanding the strong federal policy favoring arbitration, the District Courts and the Bankruptcy Courts within the Second Circuit have historically found, especially with respect to core proceedings, that arbitration should not triumph over the specific jurisdiction bestowed upon the bankruptcy courts under the Bankruptcy Code.[9]

Indeed, in *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977), a Second Circuit Court of Appeals decision under the Bankruptcy Act of 1898, and the only instance in which the Second Circuit Court of Appeals addressed this issue, the court held that a trustee cannot be compelled to arbitrate claims arising under the securities laws. As was more recently pointed out in *Bousa Inc. v. Neste Oy (In re Bousa),* 1993 WL 78019, *3, 1993 U.S.Dist. LEXIS 3221, at *7 (S.D.N.Y.1993), "the decision to compel or deny arbitration is within the discretion of the bankruptcy court...."

*See Wm. S. Newman Brewing Co. v. C. Schmidt & Sons, Inc.,* 115 B.R. 25, 27 (N.D.N.Y.1990) (stating that the rule in the Second Circuit is that the decision to stay a bankruptcy proceeding pending arbitration is discretionary with the bankruptcy court); *United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnification Ass'n (In re United States Lines),* 169 B.R. 804, 824 (S.D.N.Y.1994) ("bankruptcy judge may exercise ... discretion [to refuse to enforce arbitration clause] in core proceedings if the standards articulated in *McMahon*[10] ... are satisfied."); *In re Chas. P. Young Co.,* 111 B.R. 410, 417 (S.D.N.Y.1990) ("it is within the discretion of the bankruptcy court judge to decide whether or not to compel a debtor to proceed with arbitration proceedings."); *In re Al–Cam Dev. Corp.,* 99 B.R. 573, 578 (S.D.N.Y.1989) (bankruptcy court may exercise discretion to deny enforcement of an arbitration clause.); *Double TRL Inc. v. F.S. Leasing Inc. (In re*

---

**9.** *See Bousa Inc. v. Neste Oy,* 1993 WL 78019, *3, 1993 U.S.Dist. LEXIS 3221, *8 (S.D.N.Y.1993) (the District Court adhered to the principle that the decision to compel or deny arbitration is within the discretion of the bankruptcy court, but noted that "[s]ince Article III judges are bound to honor agreements to arbitrate, presumably non-core proceedings involving non-executory contracts should place bankruptcy judges under similar restriction.") *Id.; United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines),* 169 B.R. 804, 824 (S.D.N.Y.1994) (recognizing that the majority of those decisions which have limited judicial discretion to invalidate arbitration agreements "do not involve core proceedings where fundamental bankruptcy principles are at issue.") *Id.*

**10.** In *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Court held that the Federal Arbitration Act required a district court to stay claims under RICO and section 10(b) of the Securities and Exchange Act of 1934 and to order their submission to arbitration under an arbitration clause in the broker/client agreement. The Court established the following test for the avoidance of arbitration: a party contesting arbitration must show either (1) that the arbitration clause is unenforceable as a matter of contract law or (2) that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.

*Double TRL* ), 65 B.R. 993, 998 (E.D.N.Y. 1986) ("the enforcement of contractual arbitration agreements is left to the sound discretion of the bankruptcy court."); *Brookhaven Textiles, Inc. v. Avondale Mills, Inc.* (*In re Brookhaven Textiles* ), 21 B.R. 204 (S.D.N.Y.1982) (bankruptcy court not required to surrender its jurisdiction so as to permit a contract dispute to go to arbitration.)

Firstly, it is clear that a chapter 11 debtor's rights under its insurance policies are property of its estate under section 541(a).[11] This finding raises the presumption that a dispute involving a declaration of a debtor's rights with respect to such property of the estate is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(*O* ).

Secondly, the resolution of the instant dispute with respect to the renewal policy will impact upon the relationship between Spectrum and its creditors because of potential indemnification claims by Spectrum's officers and directors in the event the policy is rescinded. Spectrum's obligation to indemnify will, undoubtedly, affect the amount of any dividend to be paid to its unsecured creditor body. Thus, because this dispute involves property of the estate which is an essential part of Spectrum's reorganization, this Court finds that the instant matter is a core proceeding under 28 U.S.C. § 157(b)(2)(*O* ).[12]

In view of the foregoing, buttressed with the above-cited Second Circuit authorities upholding bankruptcy court discretion in these matters, this Court finds that enforcement of the instant arbitration agreement is within its discretion.

In determining whether to compel a debtor to proceed with arbitration, bankruptcy courts have identified and considered the following factors:

1. the degree to which the nature and extent of the litigation and evidence makes the judicial forum preferable to arbitration;

2. the extent to which special expertise is necessary to resolve the disputes; and

3. the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties.

*Double TRL Inc.,* 65 B.R. at 998; *Wm. S. Newman Brewing Co.,* 87 B.R. at 240; *In re R.M. Cordova Int'l Inc.,* 77 B.R. 441, 450 (Bkrtcy.D.N.J.1987).

With respect to the first factor, Home claims that the extent of litigation and evidence do not make the judicial forum preferable to arbitration because there will not be a great deal of discovery. The Court disagrees. Specifically, Home contends that since the rescission issue will turn on the whether material misrepresentations and concealments were made in the renewal policy application, the evidence will merely consist of documents demonstrating that an SEC inquiry was pending as well as underwriting testimony to demonstrate materiality.

What is hotly disputed herein and what this Court deems to be pertinent to this issue, is what was disclosed, if anything, at a June 7, 1993 meeting at which Spectrum met with representatives of Home for the purpose of renewing the policy. At the very least, it is likely that both testimonial and documentary discovery will be needed with respect to this meeting. Thus, with a distinct possibility that discovery in this matter may be much more than minimal, in order to control document production, depositions, and other discovery requests, this dispute clearly lends itself to the authority of the Court and the federal discovery rules rather than to arbitration where discovery rules may not be available nor even necessary by reason of the arbitration process.

---

**11.** *See St. Clare's Hosp. and Health Ctr. v. Insurance Co. of N. Am.* (*In re St. Clare's Hosp. and Health Center* ), 934 F.2d 15, 18–19 (2d Cir.1991) (citations omitted); *MacArthur Co. v. Johns–Manville Corp.* (*In re Johns–Manville Corp.* ), 837 F.2d 89, 91–94 (2d Cir.), *cert. denied* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

**12.** Section 157(b)(2)(*O* ) provides, as follows:

(2) Core proceedings include, but are not limited to—

(*O* ) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(*O* ).

The second factor, i.e., the extent to which special expertise is necessary to resolve the dispute, similarly favors the judicial forum. Home claims that resolution of the rescission issue will turn on a determination of the materiality of the alleged misrepresentations and concealments which will require examination of Home's underwriting processes and a finding as to whether the renewal policy would have been issued, if at all, under the same terms had "the true facts been disclosed." [13]

The issue to be resolved in this instance is whether the application by Spectrum for the renewal policy contained material misrepresentations and/or concealments. This dispute does not involve an esoteric body of law such as complex securities transactions or labor law.[14] No special knowledge of insurance law is necessary to make a determination as to whether there were material misrepresentations and/or concealments made; such determinations are routinely made by federal courts.

Insofar as the "materiality" of any alleged misrepresentations and/or concealments, the parties are likely to present risk management testimony to support their respective positions in either the arbitration or judicial forum. Thus, Home has not demonstrated that special expertise is required in determining "materiality."

Finally, with respect to the third factor, i.e., the identity of the persons comprising the arbitration panel and their track record in resolving disputes, this Court agrees with Spectrum's conclusion that since the arbitrators are as yet unknown, they have no history of being able to resolve disputes and thus, have no track record to support enforcement of the arbitration agreement. Home's assertion that "the arbitration mechanism in the Renewal Policy has been successful in the past in resolving disputes"[15] is insufficient to uphold this final factor.

In addition to the foregoing, and as indicated above, the rescission dispute is directly related to insurance policy proceeds which policy Spectrum purchased to indemnify itself for legal expenses incurred by its directors and officers. The resolution of this dispute between Home and Spectrum will inevitably affect Spectrum's unsecured creditors by affecting the size of the estate. Thus, "this effect on other creditors is an additional factor weighing in favor of [this Court] retaining jurisdiction over the controversy." *Brookhaven Textiles,* 21 B.R. at 207.

For all of the foregoing reasons, Home's motion for relief from and modification of the automatic stay in order to commence arbitration is denied.

### CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(*O*) as it is a core proceeding concerning property of the estate.

2. Home's motion for relief from and modification of the automatic stay pursuant to section 362(d) is denied.

SETTLE AN ORDER IN CONFORMITY WITH THIS OPINION.

---

13. *See* Home's Memorandum of Law, at 18.

14. *See Edgerton v. Shearson Lehman Bros., Inc.,* 98 B.R. 392 (N.D.Ill.1989) (granting relief from stay to pursue arbitration involving complex securities dispute because of the special expertise required to resolve it).

15. *See* Home's Memorandum of Law, at 18.