## In re MANSHUL CONSTRUCTION CORP., et al., Debtors.

**Yann GERON, Trustee of the Estates of Manshul Construction Corp. and Manshul Construction Company (Bronx), Inc., Debtors, Plaintiff,**

**v.**

**Allan G. SCHULMAN individually, as Trustee of The Ethan Michael Schulman Trust and The Brett Adam Schulman Trust, as Custodian of Custodial Accounts Maintained for the Benefit of Ethan Michael Schulman and Brett**

**42**

Adam Schulman, Minors, and as the personal representative of The Estate of Julius Schulman, Deceased; Nancy Schulman individually, as Trustee of The Ethan Michael Schulman Trust and The Brett Adam Schulman Trust, and as Custodian of Custodial Accounts Maintained for the Benefit of Ethan Michael Schulman and Brett Adam Schulman, Minors; The Estate of Julius Schulman, Deceased; The Ethan Michael Schulman Trust; The Brett Adam Schulman Trust; Annette Fogelman individually, and as Trustee of The Ethan Michael Schulman Trust and The Brett Adam Schulman Trust; Stanley Meyerowitz as trustee of The Ethan Michael Schulman Trust and The Brett Adam Schulman Trust; Viscount Properties, Inc.; and Janal Properties Corp., Defendants.

Bankruptcy Nos. 96 B 44080(JHG), 96 B 44079(JHG).
Adversary No. 97–8748.
District Court No. 97 Civ. 8851(JGK).

United States Bankruptcy Court, S.D. New York.

Sept. 25, 1998.

Anderson, Kill & Olick, P.C. by Martin F. Brecker, New York City, Pro se.

Salomon, Green & Ostrow, P.C. by Alec P. Ostrow, New York City, for Chapter 7 Trustee.

Judd Burstein, P.C. by Judd Burstein, New York City, for defendants except Nancy Shulman.

Hahn & Hessen, L.L.P. by Gilbert Backenroth, New York City, for Nancy Shulman.

## DECISION ON MOTION TO IMPOSE A CHARGING LIEN

JEFFRY H. GALLET, Bankruptcy Judge.

Anderson Kill & Olick, P.C. ("Anderson Kill"), a law firm, moves for an order to enforce a stipulation that, in part, deals with a fee arrangement between Anderson Kill and the defendants ("the Defendants"), its former clients, and for an order fixing and imposing a charging lien on assets of the Defendants.

### Background

On July 11, 1997, Yann Geron, the Chapter 7 trustee ("the Trustee") of the estates of Manshul Construction Corporation and Manshul Construction Company filed this adversary proceeding to recover fraudulent conveyances, allegedly made by the Defendants and various corporations under their control, pursuant to 11 U.S.C. §§ 544(b), 548 & 550 and Rule 7001 of the Federal Rules of Bankruptcy Procedure and New York Debtor and Creditor Law §§ 273, 274, 275 & 276. Thereafter, he moved to restrain the Defendants from transferring their assets and for an order of attachment.

To avoid a hearing on the provisional remedies, the parties signed a series of stipulations that, essentially, maintained the status quo until a jury trial in the District Court could be completed (the "Stipulation").[1] Among other things, the Stipulation restrict-

ed the alienation of certain assets and expenditures by the Defendants. The Stipulation permitted the Defendants to pay 80% of certain legal fees. All disputes concerning legal fees under the Stipulation were to be resolved by me. Upon the parties' consent, I "So Ordered" the Stipulation.

Subsequent to the Stipulation, Anderson Kill withdrew as counsel and was replaced by Judd Burstein, P.C. ("Burstein") for all of the Defendants except Nancy Schulman, whom Hahn & Hessen LLP is now representing. At the time Burstein replaced it, Anderson Kill claimed that the Defendants owed it substantial legal fees. The Defendants dispute the amount owed.

Under the Stipulation, the Defendants can pay a maximum of 80% of Anderson Kill's legal fees. They have deposited that amount in escrow pending a ruling as to the amount actually due.

The retainer agreement between the Defendants and Anderson Kill provides for fee disputes to be resolved by arbitration supervised by the American Arbitration Association, but the parties disagree whether that provision remains operative. However, they have agreed that if I find that the fee dispute is arbitrable, they will select a single arbitrator from the members of this Court's mediation panel.

### Jurisdiction

■ I first address whether I have jurisdiction to decide a legal fee dispute between a party to a litigation before me and its lawyer. The jurisdiction of the bankruptcy court, although broad, is limited to matters "arising in," "arising under" or "related to" a case filed under Bankruptcy Code. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

■ "Arising in" and "arising under" proceedings "encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and 'depend upon the application or construction of bankruptcy law as expressed in Title 11.'" Silverman v. General Ry. Sig-

---

1. There were six successive stipulations signed on July 23, 1997, October 8, 1997, October 10, 1997, October 13, 1997, November 6, 1997 and May 11, 1998. For this opinion, I will treat them as one agreement.

*nal Co. (In re Leco Enters., Inc.)*, 144 B.R. 244, 248 (S.D.N.Y.1992) (*quoting Consulting Actuarial Partners, L.P. v. Descap Planning, Inc. (In re Consulting Actuarial Partners, L.P.)*, 72 B.R. 821, 828 (Bankr.S.D.N.Y. 1987)). The bankruptcy court's jurisdiction is also defined in the general reference provision of 28 U.S.C. § 157(a). *See In re Texaco, Inc.*, 85 B.R. 934, 937 (Bankr.S.D.N.Y.1988). Section 157(b)(1) vests full judicial power in bankruptcy courts over core proceedings "arising under" Title 11, or "arising in" a case under Title 11. *Id.* Illustrations of core proceedings under § 157(b)(1) are found in 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); § 157(b)(2)(B) (allowance or disallowance of claims against the estate); and § 157(b)(2)(O) (other proceedings affecting the liquidation of assets of the estate).

■ Other courts in this district have addressed the meaning of "arising in" and "arising under," and have held that a proceeding is "core," which falls under the bankruptcy court's jurisdiction, "if it invokes a substantial right provided by title 11 or it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Leco Enters.*, 144 B.R. at 249 (*quoting In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). A core proceeding is "an action [that has] .... as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." *Id.* (*quoting Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 173 (Bankr.E.D.N.Y. 1986), *aff'd*, 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987)).

Even if a case does not "arise in" or "arise under" Title 11, a bankruptcy court may still have jurisdiction over the matter if the proceeding is "related to" a Title 11 case. The Supreme Court has noted that "[p]roceedings 'related to' [a] bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307 n. 5, 115 S.Ct. 1493 (citations omitted).

■ The Second Circuit has held that "[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankruptcy estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir.1992). "A case has a 'conceivable effect' on the bankruptcy estate 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638 (S.D.N.Y.1997) (*quoting Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y.1994)); *Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores)*, 190 B.R. 157, 160 (S.D.N.Y.1995) (same). A civil proceeding is related to a bankruptcy where an action between nondebtors would affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities. *See In re Kolinsky*, 100 B.R. 695, 702 (Bankr. S.D.N.Y.1989) (*citing Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d Cir.1983)).

■ "Related to" jurisdiction, however, is not without limits. "[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493 *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984); *See Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, 1995 WL 489711 *3 (S.D.N.Y. Aug. 15, 1995) (*citing In re Turner*, 724 F.2d 338, 341 (2d Cir.1983)) (there is no jurisdiction over an action that does not pose a "significant connection" to the bankruptcy case).

■ Thus, "a proceeding involving nondebtors will not be found to be related solely on the ground that it will affect a distribution to creditors unless the proceeding involves property in which the debtor has a legally cognizable interest." *In re Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr.S.D.N.Y.1989). *See In re Shirley Duke Assocs.*, 611 F.2d 15, 19 (2d Cir.1979) (a creditor is subject to a bankruptcy court's jurisdiction in his dealings

with the debtor, but not in his dealings with third parties); *Nationwide Mechanical Contractors Corp. v. Hokkaido Takushoku Bank Ltd.,* 188 A.D.2d 871, 872, 591 N.Y.S.2d 578, 580 (3d Dep't 1992) (a bankruptcy court lacks jurisdiction over controversies between third parties not involving the debtor or its property).

■ Anderson Kill asserts that this dispute falls under my core jurisdiction because the issues presented arise in a core adversary proceeding to recover alleged fraudulent transfers. It further argues that the Stipulation places all of the Defendants' assets within my jurisdiction. Anderson Kill asserts that, at the very least, those assets are in the constructive possession of this Court. In support of its position, Anderson Kill notes that the Defendants must account to the Trustee twice each month for those assets and are restricted in their use by the Stipulation. It concludes that under these circumstances, this is a core matter because it is a proceeding to turnover money or property in which the estate has an interest. *See J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.),* 124 B.R. 931, 938 (S.D.N.Y.1991) (*citing Beard v. Braunstein,* 914 F.2d 434, 444–45 (3d Cir.1990)).

I find that this is a "core" proceeding. The motion to enforce the Stipulation and to impose a charging lien on the restrained assets involves a dispute that arises in a litigation that can be commenced only under Title 11 and could only arise in a bankruptcy case. The Stipulation provides that the Defendants are restrained from using their property, except as permitted by the Stipulation, as interpreted by me. Indeed, 80% of Anderson Kill's compensation, as provided for under the Stipulation, will come from the restrained assets, which will affect the bankruptcy estate if the Trustee is successful in prosecuting this adversary proceeding.

Normally, fee disputes would be beyond my jurisdiction because they do not affect the debtor or the bankruptcy estate. I have so held previously, as the Defendants remind me. *See In re West 57th St. Concrete Corp.,* Case No. 92–B–48877 (Bankr.S.D.N.Y. April 11, 1996), *aff'd,* 1996 WL 706931 (S.D.N.Y. 1996); *In re Gucci,* 193 B.R. 417, 419 (Bankr.

S.D.N.Y.1996). In *West 57th St.* and *Gucci,* the proceeds were payable to creditors, not the debtor, and therefore had no effect on the bankruptcy case. Here, the potential proceeds to be recovered are for the estate and the imposition of a charging lien would clearly affect distributions to other creditors. *See In re Ralph Lauren Womenswear, Inc.,* 204 B.R. 363, 374 (Bankr.S.D.N.Y.1997) ("[a]t a minimum ... [the] determination of [a charging] lien has a significant connection with the bankruptcy estate [because] the settlement proceeds emanate directly from the estate....").

### The Arbitration Clause

The next issue is whether the arbitration clause in the retainer agreement between Defendants and Anderson Kill is enforceable. The Federal Arbitration Act ("FAA") provides in pertinent part that:

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. § 3 (1994).

■ The FAA "requires federal courts to enforce valid arbitration agreements in commercial contracts and limits the grounds for vacating or modifying arbitration awards." *In re Spectrum Info. Technologies, Inc.,* 183 B.R. 360, 362 (Bankr.E.D.N.Y.1995). Furthermore, public policy favors arbitration as a means of resolving disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[T]he FAA 'establishes a liberal policy in favor of arbitration as a means to reduce the costliness and delays of litigation' ...." *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Assoc., Inc. (In re United States Lines),* 220 B.R. 5, 12 (S.D.N.Y.1997) (*quoting Campaniello Imports, Ltd. v. Saporiti Italia,* 117 F.3d 655, 665 (2d Cir.1997)).

Historically, courts faced with the issue of whether or not to enforce an arbitration

agreement have held that "the bankruptcy court has complete discretion to decide whether to refuse a party's request to arbitrate a particular dispute in accordance with a contractual provision to do so." *Bezanson v. Consolidated Constructors & Builders (In re P & G Drywall & Acoustical Corp.*), 156 B.R. 704, 705 (Bankr.D.Me.1993). *See Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55, 59 (3d Cir.1983), *cert. denied*, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984) (where many bankruptcy proceedings require "expeditious resolution of bankruptcy matters," bankruptcy courts retain broad discretion to decide whether to enforce an arbitration agreement). Some courts still follow the proposition that a bankruptcy court has broad discretion over whether or not to enforce an arbitration provision. *See Wm. S. Newman Brewing Co., Inc. v. C. Schmidt & Sons, Inc.*, 115 B.R. 25, 27 (N.D.N.Y.1990) (citations omitted); *In re Caldor, Inc.–NY*, 217 B.R. 121, 129 (Bankr.S.D.N.Y.1998); *In re Barney's, Inc.*, 206 B.R. 336, 343 (Bankr. S.D.N.Y.1997) (citations omitted). However, it seems that this view does not take into account two Supreme Court decisions. The Supreme Court, in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), stated that arbitration provisions are to be enforced under the FAA because:

> [t]he Arbitration Act ... mandates enforcement of agreements to arbitrate statutory claims. Like any other statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history or from an inherent

conflict between arbitration and the statute's underlying purposes.

*Shearson/American Express*, 482 U.S. at 226–27, 107 S.Ct. 2332 (citations and internal quotations omitted).

The standard advanced by the Supreme Court in *Shearson/American Express* was reiterated two years later in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Applied in the bankruptcy context, courts addressing the issue of the enforceability of arbitration agreements have recently applied the *McMahon/Rodriguez* framework and focused on "whether the party seeking to avoid enforcement of otherwise applicable arbitrable provisions has demonstrated that arbitration would conflict with the purposes of the Bankruptcy Code, given the nature of the proceeding." *In re United States Lines*, 220 B.R. at 12 (*citing Insurance Co. of North Amer. v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.*), 118 F.3d 1056, 1065 (5th Cir. 1997); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–62 (3d Cir.1989)).

The Third Circuit in analyzing the extent of a court's discretion in denying to uphold a valid arbitration provision in light of *McMahon* and *Rodriguez* held that:

> the district court lacked the authority and discretion to deny enforcement of the arbitration clause unless [the party opposing arbitration] had met its burden of showing that the text, legislative history, or the purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration clause in a case of this kind, that is, a noncore proceeding brought by a trustee to enforce a claim of the estate in a district court.

*Hays*, 885 F.2d at 1155–56.[2]

Here, Anderson Kill argues that I should exercise my discretion and not en-

---

2. In *Hays*, the Third Circuit implicitly overruled its prior decision in *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983), *cert. denied*, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), which held that courts have discretion in enforcing arbitration agreements. The

*Hays* Court concluded that the reasoning in *Zimmerman* was not based on the post–1984 bankruptcy scheme that requires some bankruptcy-related proceedings to proceed outside the bankruptcy court as opposed to the previous congressional policy of consolidating all bankruptcy re-

force the arbitration clause in its retainer agreement with the Defendants.[3] It asserts that in deciding whether or not to enforce an arbitration agreement, bankruptcy courts have relied on the following factors:

1. the degree to which the nature and extent of the litigation and evidence makes the judicial forum preferable to arbitration;

2. the extent to which special expertise is necessary to resolve the disputes; and

3. the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties.

*In re Spectrum Info. Technologies, Inc.*, 183 B.R. 360, 364 (Bankr.E.D.N.Y.1995) (*citing Double TRL Inc. v. F.S. Leasing Inc. (In re Double TRL, Inc.*), 65 B.R. 993, 998 (Bankr. E.D.N.Y.1986); *Wm. S. Newman Brewing Co. v. C. Schmidt & Sons, Inc. (In re Wm. S. Brewing Co.*), 87 B.R. 236, 241 (Bankr. N.D.N.Y.1988); *In re R.M. Cordova Int'l Inc.*, 77 B.R. 441, 450 (Bankr.D.N.J.1987)).[4]

In June 1998, I held a hearing to resolve a fee dispute between the Defendants and the Trustee concerning some of the fees now at issue between the Defendants and Anderson Kill. Anderson Kill asserts that I have already received evidence of its fees at that hearing and found them reasonable. Therefore, it argues, arbitration would be a waste of resources and result in egregious litigation inefficiency. In making its argument, Anderson Kill overlooks the fact that the Defendants did not have an opportunity to air their dispute with Anderson Kill at the June hearing.

Similarly, Anderson Kill argues that no special expertise is necessary for resolution of this dispute because a fee hearing does not involve analysis of an esoteric field of law. Moreover, it asserts that to the extent that bankruptcy expertise is necessary, that expertise lies in this court.

I find Anderson Kill's argument that I should exercise my discretion against enforcing the arbitration agreement unpersuasive. It is far from clear to me that I have the discretion to deny the Defendants arbitration under these facts. Even if I have that discretion, I find that arbitration would be the most desirable way to resolve this dispute. In coming to that conclusion, I have considered the state of my docket and whether or not the motion is more likely to be expeditiously resolved before me or an arbitrator. In addition, I have considered the possibility that otherwise privileged matter, which I

---

lated matters in the bankruptcy court. *See Hays*, 885 F.2d at 1160. Furthermore, the Court noted that *Zimmerman* was decided before several Supreme Court decisions that analyzed the FAA in a "number of new contexts." *Id.* (*citing Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) (other citations omitted). Specifically, the *Hays* Court found that these Supreme Court cases "establish that the Arbitration Act represents a clear congressional rejection of judicial skepticism regarding the utility of arbitration and a clear congressional mandate that private parties who contract for arbitration, as a more efficient method of dispute resolution, shall not have their bargains frustrated." *Hays*, 885 F.2d at 1160.

3. In the Defendants' memorandum of law opposing Anderson Kill's motion, they assert that the arbitration clause at issue provides that:

[Schulman] agree[s] that any controversy or claim arising out of or relating to this retainer agreement or the breach thereof ... shall be settled by arbitration in New York City ... and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.

4. I note that not all courts agree that application of these factors is appropriate. *See Bezanson v. Consolidated Constructors & Builders (In re P & G Drywall & Acoustical Corp.*), 156 B.R. 704, 705–06 (Bankr.D.Me.1993) (arguments of efficiency are not a per se reason to refuse to enforce an arbitration clause even in the bankruptcy context) (citation omitted); *In re Chorus Data Sys., Inc.*, 122 B.R. 845, 852 (Bankr.D.N.H.1990) (the "Supreme Court has made it unmistakably clear that such qualitative judgments about the desirability of arbitration procedures are not a proper factor in deciding whether to exercise discretion to refuse to enforce an arbitration provision.") (*citing Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).

would prefer not to hear, may be revealed at the hearing.

I note that Anderson Kill's assertion that the Defendants' assets are under my jurisdiction, and resolution of this dispute would affect creditors by affecting the assets of the estate, does not necessarily support its argument that I should decide this issue. Whether I conduct the fee hearing or the parties arbitrate their dispute, any resolution in favor of Anderson Kill will affect the restrained assets. However, that argument does not preclude arbitration.

▮▮▮ Anderson Kill also asserts that the Stipulation superseded the arbitration clause in the retainer agreement. It asserts that by consenting to the continuation of my jurisdiction over their assets, and by submitting the payment and amount of their legal fees to my jurisdiction by the Stipulation, the Defendants have superseded, or at least modified, the arbitration clause. I do not agree.

Exhibit 1 to Allan Schulman's Affidavit in Partial Opposition to Anderson Kill's motion is a letter dated April 29, 1998 ("April 29 Letter") written by Howard E. Cotton, Esq., a member of Anderson Kill, to defendant Allan Schulman. Mr. Cotton wrote that in the event the Trustee approves Anderson Kill's fees but Mr. Schulman does not, Anderson Kill would try to compromise with Mr. Schulman. For Anderson Kill to now argue that the fee hearing against the Trustee was the Defendants' forum to address their objections to their attorneys' fees is inconsistent with both the Stipulation and the April 29 Letter. Furthermore, as the Defendants assert, the fee hearing only dealt with Anderson Kill's April bill. The Defendants argue that they have objections to Anderson Kill's May, June and July bills as well.

The Stipulation and the retainer agreement can each be enforced, however, the parties cannot immediately enforce the arbitrator's award beyond the limitation of the Stipulation.

### Attorney's Liens

▮▮▮ Under New York law, an attorney has two types of liens available to secure payment of outstanding fees. *United States v. McCoy*, 1993 WL 77382 at *2 (S.D.N.Y.

March 11, 1993). First, to secure payment of outstanding fees, an attorney can impose a common law retaining lien which "entitles an attorney who has rendered services or made disbursements on behalf of a client to retain, as security for payment, the client's papers and funds which are in the attorney's possession." *Misek–Falkoff v. International Business Mach. Corp.*, 829 F.Supp. 660, 663 (S.D.N.Y.1993) (*citing Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991)). Second, an attorney has a statutory charging lien, originally a lien at common law and subsequently codified by N.Y. Judiciary Law § 475 (McKinney 1983). *See McCoy*, 1993 WL 77382 at *2. Section 475 of the N.Y. Judiciary Law governs attorneys' charging liens and is enforceable by federal courts sitting in New York. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.1998).

Specifically, § 475 provides, in pertinent part, that:

> [f]rom the commencement of an action ... or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come....

N.Y. Judiciary Law § 475 (McKinney 1983).

▮▮▮ Significantly, § 475 does not authorize the court to impose a charging lien against all property owned by the attorney's client. *See In re Rosenman & Colin v. Richard*, 850 F.2d 57, 61 (2d Cir.1988) (*citing In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d Cir.1979); *Morey v. Schuster*, 159 A.D. 602, 609, 145 N.Y.S. 258, 262–63 (1913), *aff'd*, 217 N.Y. 639, 112 N.E. 1066 (1916)). "Rather, an attorney is limited to a lien on the judgment in his client's favor." *Id.* (internal quotations omitted). An attorney's right to collect out of funds or property he obtains for his client is premised on the theory that " 'it is the attorney who has created the fund out of which he is paid by his efforts.' " *Id.*

▮▮▮ To create a charging lien, an attorney's efforts must result in (1) a client assert-

ing a claim, (2) which can result in proceeds (3) payable to or for the client's benefit. *See Cassirer v. Invex, Ltd. (In re Schick)*, 215 B.R. 13, 15 (Bankr.S.D.N.Y.1997) (*citing United Orient Bank v. 450 West 31st St. Owners Corp.*, 155 Misc.2d 675, 589 N.Y.S.2d 390 (Sup.Ct.1992)). Therefore, a defendant's attorney cannot obtain a charging lien unless the client asserts a counterclaim. *See id.* (citations omitted). The Second Circuit has held that, "[a]n attorney who merely defends or protects his client's interest in property without obtaining an affirmative recovery is not entitled to a lien on the property that his client retains." *In re Rosenman & Colin*, 850 F.2d at 61 (*citing Ekelman v. Marano*, 251 N.Y. 173, 167 N.E. 211 (1929); *Desmond v. Socha*, 38 A.D.2d 22, 327 N.Y.S.2d 178 (3d Dep't 1971), *aff'd*, 31 N.Y.2d 687, 289 N.E.2d 181, 337 N.Y.S.2d 261 (1972)).

Anderson Kill argues that it is entitled to a charging lien for the 20% balance of its fees that may not be paid under the Stipulation. It asserts that although charging liens traditionally attach to the proceeds of judgments entered upon causes of action or counterclaims, the express language of N.Y. Judiciary Law § 475 accommodates less formal modes of recovery and, thus, would include proceeds of other "claims" as well. It argues that the Trustee has secured a restraining order that, coupled with restrictions and obligations imposed on the Defendants, is an "informal attachment." If the Defendants' "claim" is successful, the result will be that the Defendants' restrained assets will revest in them. Anderson Kill asserts that these "revested" assets are proceeds that satisfies the statute.

I find Anderson Kill's arguments unpersuasive. First, the Defendants never filed a counterclaim. There is considerable authority holding that a defendant's attorney cannot obtain a charging lien unless there is a counterclaim. *See In re Schick*, 215 B.R. at 15 (*citing United States v. J.H.W. & Gitlitz Deli & Bar, Inc.*, 499 F.Supp. 1010, 1014 (S.D.N.Y.1980); *United States v. Clinton*, 260 F.Supp. 84, 90 (S.D.N.Y.1966); *Ekelman*, 251 N.Y. at 173, 167 N.E. 211; *National Exhibition Co. v. Crane*, 167 N.Y. 505, 508, 60 N.E. 768, 769 (1901); *United Orient Bank v. 450 West 31st St. Owners Corp.*, 155 Misc.2d 675, 676, 589 N.Y.S.2d 390, 390–91 (Sup.Ct.1992)). Anderson Kill cites to one case where the court, in a condemnation proceeding, found that the filing or nonfiling of a notice of claim is immaterial on the issue of attaching an attorney's lien to an owner's claim against a municipal department vested with authority, to acquire the owner's property. *See Ifan Realty Corp. v. Klachkin (In re Washington Square South East)*, 154 N.Y.S.2d 104, 107 (Sup.Ct.1956). That holding is *sui generis* and contrary to the weight of authority.

Second, although Anderson Kill argues that the various stipulations in this proceeding were an "informal attachment," which, if the Defendants were successful in defeating the Trustee's claim, would result in a reinvestment of restrained assets. I never signed an Order of Attachment. The Stipulation only extended a Temporary Restraining Order and provided for a spending budget for the Defendants. Anderson Kill's argument that the Defendants' "claim" is to avoid an "informal attachment," which would satisfy the requirements of N.Y. Judiciary Law § 475, is really nothing more than an attempt to defend or protect one's right in property, which is not grounds for the imposition of a charging lien. *See In re Rosenman & Colin*, 850 F.2d at 61. The Stipulation only extended a Temporary Restraining Order but, even the "informal attachment," which I am not sure I would characterize as such, only serves to interfere with the Defendants use and enjoyment of their property. It does not vest in the Trustee. If they are successful in unrestraining the assets or defeating the "informal attachment," the Defendants would have no more than the unfettered right to enjoy and dispose of their property as they see fit. There is no affirmative recovery.

Anderson Kill's attempt to distinguish this case from *In re Schick*, 215 B.R. at 15, is also unpersuasive. The *Schick* court found that in the absence of a counterclaim, a claim to void an attachment is not sufficient grounds to impose a charging lien. *Id.* at 16. I

agree. Here there is not even an attachment.

### Conclusion

Accordingly, I (1) find that this is a core proceeding; (2) direct arbitration of the fee dispute; and (3) deny Anderson Kill's motion to impose a charging lien. The parties are directed to appear before me on Friday October 9, 1998 at 9:30 a.m., at which time, if the parties have not agreed on an arbitrator, I will appoint one.

Settle Order.